1

2

3

4

5

6

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

7

8

9

10

11

12

| | |
|---|---|
| LONDON WALLACE, | CASE NO. 1:19-CV-1199 AWI SAB |
| **Plaintiff** | |
| v. | **ORDER ON THE PARTIES' MOTIONS IN LIMINE** |
| CHRISTOPHER MARTINEZ, et al., | |
| **Defendants** | (Doc. Nos. 95, 96, 97, 98, 99, 100, 102, 103, 104, 105, 106, 107, 108, 109, 110, 111) |

13      This is a civil rights lawsuit that stems from a confrontation between Plaintiff London

14  Wallace ("Wallace") and three officers of the City of Fresno Police Department, Defendants

15  Christopher Martinez ("Martinez"), Ricardo Loza ("Loza"), and Patrick Feller ("Feller").  Wallace

16  seeks damages under state and federal law arising out of the Defendants' use of force while

17  detaining him during a probation search of a third party's apartment.[1]  Currently before the Court

18  are Wallace's five motions in limine and Defendants' ten motions in limine.  This order resolves

19  the parties' respective motions.[2]

20

21  **I.      PLAINTIFF'S MOTIONS IN LIMINE**

22          1.      Motion No. 1 – Exclude Wallace's Criminal History, Law Enforcement Contacts,

23                  and Alleged Gang Affiliation

24      *Plaintiff's Argument*

25      Wallace argues that prior to making contact with him on the night of the incident (January

26

---

[1] The parties are familiar with the facts of this case.  A thorough recitation of the underlying facts can be found in the
27  Court's order on Defendants' motion for summary judgment, Doc. No. 89.

[2] The Court has received and reviewed all motions, oppositions, and replies.  The fact that a reply to a particular
28  motion is not described does not mean that the Court did not consider the reply.

23, 2019), Defendants did not know him, had never seen him, and received no information regarding his criminal history.  Further, prior to the incident, Wallace was not considered or known to be affiliated with any gangs.  Wallace argues that he has no prior criminal arrests or convictions, and it was only after this event and media attention that Defendants conducted an investigation and determined that he was a gang member, even though he is not.  Because no prior criminal activity or gang affiliation was known by the Defendants at the time of the incident, evidence of criminal activity or gang affiliation is irrelevant.  Further, any relevance that the evidence may have is substantially outweighed by the danger of unfair prejudice and could create a mini-trial because he will have to address, explain, and refute Defendants' evidence.  Finally, evidence of prior criminal activity or gang affiliation is impermissible character evidence under Rule of Evidence 404(a).

### Defendants' Opposition

Defendants argue evidence of criminal history, prior law enforcement contacts, and gang affiliation are relevant to explain Wallace's behavior on the date in question and to damages. Wallace's prior contacts with law enforcement, which includes an incident in which he lied to the police about his identity, and gang affiliation are relevant to show bias towards the police and his motive or intent during the incident to ignore commands and resist the police in the presence of more senior gang members.  The evidence is also relevant with respect to damages because criminal history, prior law enforcement contacts, and gang affiliation affects claims for lost earnings and loss of earning capacity.

### Discussion

Wallace's motion indicates that, prior to the incident at issue, he had no criminal history and no police contacts.  Defendants do not challenge this assertion.  If Wallace had no prior criminal history or police contacts, then there would be no evidence on that subject that could be introduced.  That is, prior criminal history and police contacts is a non-issue because Wallace had neither before the January 2019 incident.

Defendants' opposition states that, at some unknown time after the incident and under unknown circumstances, Wallace lied about his identity to police.  However, the Defendants could

not have knowledge of this post-incident contact, and there is no assertion that this contact led to a conviction.  Moreover, Defendants fail to explain how merely giving a false identity to police sometime after this incident would make their version of events more likely.  Cf. Boyd v. City & Cnty of San Francisco, 576 F.3d 938, 944 (9th Cir. 2009) ("[W]here what the officer perceived just prior to the use of force is in dispute, evidence that may support one version of events over another is relevant and admissible.").  Without more detail and specifics surrounding the "false identity" contact, the Court finds that there is no relevance to the contact.  To the extent that there is relevance, the danger of unfair prejudice and bias appear to substantially outweigh any relevance that the contact may have.  See Fed. R. Civ. P. 403.

With respect to criminal history, misdemeanors involving dishonesty and felonies that are not stale are generally admissible under Federal Rule of Evidence 609.  The fact of conviction for such crimes is relevant to a party or witness's credibility/veracity.  Here, no criminal convictions are identified.  Again, Defendants do not contradict the assertion that Wallace had no criminal history prior to the January 2019 incident, nor do they claim that they were ever aware of any criminal history.  While the parties' respective briefing suggests that Wallace may now have a criminal history, i.e. one that post-dates the January 2019 incident, no party identifies what that criminal history is.  Moreover, it is unclear how a post-incident conviction would make the Defendants' version of events more likely for purposes of Boyd.  In the absence of citation to Rule 609 or an explanation regarding what Wallace's criminal history actually is, the Court cannot find any relevance to Wallace's unknown criminal history, including to the issue of damages.

With respect to gang affiliation/membership and liability, the parties do not explain or provide any information regarding Wallace's alleged gang affiliation.  Nevertheless, Defendants contend that Wallace is affiliated with a gang and that the police were at the apartment because they were conducting a probation search of an apartment in which gang members were seen passing around a firearm.  Defendants suggest that Wallace was attempting to resist the officers and refusing to comply with any of their instructions because of his gang affiliation and his desire to impress more senior gang members.  The Court agrees that this theory could be relevant under Boyd.  However, this theory contains many assumptions.  It assumes that Wallace was affiliated

with a particular gang at the time of the incident, that other members of that gang were present during the incident with Wallace, and that it is common for less senior gang members or affiliates of that gang to do things to seek prestige among other gang members by hindering or resisting police.  The first and third points in particular would seem to require expert testimony regarding gangs, particularly since no other gang members appear to have engaged in resistive behavior.  The Court is unaware of any gang expert being designated.  Further, Wallace denies that he is a gang affiliate or member and states that he would refute such an allegation.  Considering the amount of additional evidence that would be necessary for evidence of gang affiliation to have relevance under *Boyd*, including expert testimony, as well as Wallace's determination to refute gang membership, the danger of undue consumption of time and the creation of a mini-trial is quite real.  Further, for liability purposes, evidence of gang membership poses a significant danger of creating undue prejudice and bias.  The Ninth Circuit has recognized that gang membership will almost always be prejudicial.  See Huizar v. City of Anaheim, 840 F.3d 592, 603 (9th Cir. 2016); see also Gilmore v. Lockard, 936 F.3d 857, 867 (9th Cir. 2019) (finding that some expert testimony regarding gang membership was "largely unobjectionable," but that other testimony regarding gang and gang activity was unduly prejudicial and should not have been admitted).  Without further information from Defendants, it is not clear that Wallace's alleged gang affiliation would be sufficiently probative relative to prejudice.  Given these considerations, the Court is not satisfied that Defendants have shown that Wallace's alleged gang affiliation is admissible.

 With respect to gang affiliation/membership and damages, gang affiliation can have marginal relevance to damages.  See Huizar, 840 F.3d at 603.  However, the parties have provided insufficient information regarding Wallace's alleged gang membership for the Court to be able to determine whether evidence of gang membership may be relevant to damages.  While many of the concerns that the Court has regarding gang membership and *Boyd* apply to the issue of damages, the Court cannot say without additional information that evidence of gang membership or affiliation should be excluded or admitted for purposes of damages.

 *Ruling*

 This is motion is granted with respect to any pre-January 23, 2019 law enforcement

contacts or criminal history, as well as the post-January 23, 2019 "false identity" law enforcement contact.  This motion is granted with respect to gang affiliation/membership for all liability issues, but Defendants may seek reconsideration if they can make a sufficient offer of proof that shows an appropriate predicate for admissibility, as discussed above.  The Court reserves this motion with respect to gang affiliation/membership for purposes of damages.

2.      Motion No. 2 – Exclude Evidence of Alcohol or Drug Use By Wallace Prior to and the Day of the Incident

*Plaintiff's Argument*

Wallace argues that several hours before the officers arrived at the apartment, he consumed marijuana.  No officers had information that he had used marijuana prior to or during the incident, nor did any officer suspect that he had used marijuana.  Evidence concerning marijuana is wholly irrelevant to whether it was objectively reasonable to detain, arrest, and use force against Wallace.  Further, there is no admissible evidence, such as expert testimony, to show that Wallace's alleged drug or alcohol use makes the officers' version of events more likely or that the drug use would adversely affect Wallace's damages.  Evidence of drug or alcohol use would be unduly prejudicial, confusing, and a waste of time, and would also be improper character evidence.

*Defendants' Opposition*

Defendants argues that Wallace's history of drug and/or alcohol use is relevant to his ability to perceive, explain his behavior during the incident, and to determine the amount of his damages.  Wallace admitted to using marijuana on the day of the incident.  Wallace's marijuana use has a tendency to have impacted or removed his inhibitions and make it more likely that he would continue to resist officers.  Thus, marijuana use shows Wallace's intent, motive, or plan on the day of the incident.  Further, if Wallace was under the influence of marijuana, it would clearly affect his ability to perceive.  Finally, courts recognize that drug or alcohol use, or a history thereof, is relevant to calculating damages.  The probative value of the evidence is not substantially outweighed by any unfair prejudice.

*Discussion*

The only evidence before the Court regarding drug or alcohol use by Wallace is that

Wallace had ingested an unknown quantity of marijuana sometime during the evening of January 23, 2019, but before the incident with Defendants.  There is no evidence before the Court that Wallace excessively uses drugs or alcohol, nor is there evidence that Wallace regularly uses drugs or alcohol to the point that he is regularly inebriated.  Therefore, the Court will focus on the only evidence specifically identified, that Wallace ingested marijuana on the evening of January 23, 2019, some "hours" before the incident.

With respect to liability, the Court cannot find that evidence of Wallace's marijuana use on January 23, 2019 is sufficiently relevant.  To be sure, drugs in the system of a suspect can make an officer's version of events more likely or explain a person's erratic behavior.  See Boyd, 576 F.3d at 944; Turner v. County of Kern, 2014 U.S. Dist. LEXIS 18573, *5-*7 (E.D. Cal. Feb. 12, 2014).  Here, however, it is unclear when exactly Wallace ingested marijuana or how much marijuana he had ingested.  Further, even accepting that some quantities of marijuana could adversely affect an individuals ability to properly process an event or perhaps make the person more resistive, expert testimony would be needed to explain what those quantities of marijuana would be.  That is, expert testimony would be needed to explain that the amount of marijuana ingested by Wallace could reasonably be expected to adversely affect Wallace's perceptions or cognition and could reasonably be expected to make Wallace more resistive, as argued by Defendants.  Cf. Turner, 2014 U.S. Dist. LEXIS 18573 at *11-*15 (discussing that a toxicologist could opine about substances detected, the quantity of substances detected, the known effects of the quantity of the substance detected, and that conduct exhibited by the suspect was consistent with quantity of the substance detected); cf. also Estate of Elkins v. Pelayo, 2022 U.S. Dist. LEXIS 69648, *103-*104 (E.D. Cal. Apr. 14, 2022) (finding that toxicologist's opinions regarding a suspects actions were consistent with the known effects of the high quantity of methamphetamine in the suspect's system).  The Court is unaware of any designated expert who will offer such opinions.  In the absence of evidence that establishes the timing and quantity of Wallace's marijuana ingestion, as well as the apparent absence of any expert testimony regarding marijuana, the Court cannot find evidence of Wallace's marijuana ingestion is sufficiently relevant to withstand the danger of unfair prejudice that this evidence could engender.

With respect to damages, evidence of a single instance of ingesting an unknown quantity of marijuana while Wallace was a minor has no detectable relevance to damages.  Any relevance that might exist of the single instance is substantially outweighed by the danger of unfair prejudice under Federal Rule of Evidence 403.

*Ruling*

This motion in limine is granted with respect to damages.  This motion in limine is granted with respect to liability, subject to Defendants providing more specific evidence regarding timing and quantity of marijuana and identifying admissible expert testimony, as described above.

3.      Motion No. 3 – Exclude Evidence that the City Found that the Officers' Use of Force was Reasonable, Justified, Within Policy, and/or Not Criminal

*Parties' Positions*

Wallace wishes to exclude all evidence that the City, including the police department, found that each Defendant officers' use of force was reasonable, within policy, justified, and not criminal.  This includes references to an Internal Affairs investigation and report.

Defendants have filed a notice of non-opposition.

*Discussion*

Given the express non-opposition, the Court detects no reason why Wallace's third motion in limine should not be granted.

*Ruling*

In light of Defendants' non-opposition, this motion in limine is granted.

4.      Motion No. 4 – Exclude Testimony of Human Factors Expert James Borden

*Plaintiff's Arguments*

Wallace argues that the testimony of Defendants' human factors expert, James Borden, should be excluded on several grounds. First, Plaintiff argues that Borden lacks the knowledge, skill, experience, training, and education to qualify as a human factors expert because he does not possess a college or advanced degree in a human factors discipline and is merely a member of organizations with no scientific credibility.  Wallace further argues that Borden's experiences as a

law enforcement officer do not give him the technical or specialized knowledge needed to qualify as a human factors expert.

Second, Wallace argues that Borden's testimony is irrelevant, does not assist the trier of fact, and inappropriately invades the province of the jury.  Specifically, Wallace contends that Borden's opinion on what Defendants perceived during the altercation is irrelevant because the jury themselves can assess what Defendants perceived from Defendants' own testimony.  Wallace further argues that Borden's opinion relating to whether Defendants' use of force was reasonable is speculative and improperly assumes the jury's role.

Third, Wallace contends that Borden's testimony is unreliable since his theories cannot be tested, and he propounds no methodology, technique, or theory to serve as a basis for his opinions.

Finally, Wallace argues that the probative value of Borden's testimony is outweighed by the risks of unfair prejudice, confusion of issues, undue consumption of time, and cumulative evidence. Given that Defendants already designated Robert Fonzi as their police practices, policies, and procedures expert, the opinions of Borden relating to those subjects would be cumulative and a waste of time.

*Defendants' Arguments*

Defendants argue that each of Wallace's asserted grounds for excluding Borden's testimony is unfounded. First, Defendants contend that Borden has the knowledge, skill, experience, and training to testify on police-related human factors, human behavior/movement, reaction timing, and human performance related to law enforcement.  According to Defendants, Borden's training and experiences as a law enforcement officer and course instructor on police performance, investigations, decision making, and action-reaction timing make him qualified to testify on these issues.  Defendants further assert that Borden's membership in several technical groups and experience working in videography and forensic video analysis further bolster his qualifications.

8

Second, Defendants argue that Borden's testimony is relevant because it will provide necessary context to the underlying use of force incident.  Such contextual information includes Defendants' performance and human dynamics factors such as decision-making, time compression, and reaction times.  While Defendants agree that all factual determinations lie within the province of the jury, they contend that Borden's testimony will not present factual findings but will instead discuss the above issues and forensic video analysis to assist the jurors with their analysis of key evidence regarding the subject encounter.

Third, Defendants assert that Borden's testimony is reliable and that Wallace provides no evidence to show otherwise.  Defendants note that Borden used the same methodology that he used in numerous other cases and that he expressly outlined his general methodology in his report.  Furthermore, Defendants indicate that Borden explained in his report that he arrived at his opinions by conducting a thorough review of the case materials, the other files listed within his report, and based on his background, training, education, and experience.

Finally, Defendants argue that Borden's testimony is not cumulative and a waste of time because it will focus on topics that are distinct from those that will be addressed by Fonzi.  Specifically, Defendants assert that Fonzi's testimony will focus on "police practices, policies, and procedures regarding detention, arrest, and use of force and related contemporary investigative and law enforcement practices, tactics, training, procedures, and policies, as they relate to the events and claims at issue in plaintiff's operative complaint/allegations." Meanwhile, Borden's testimony will focus on "issues regarding police performance/human dynamics factors, including but not limited to standards and reaction times for police officers in higher-risk situations, and related issues of officer perception, decision-making, and forensic video review and analysis."

*Legal Standard*

Pursuant to Fed. R. Evid. 702, an expert must be qualified by "knowledge, skill, experience, training, or education."  The expert may testify if (1) the testimony is based upon

9

sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case. Fed. R. Evid. 702.

Once the proposed witness qualifies as an expert, it is the responsibility of the trial court to ensure thereafter that the expert testimony admitted is both relevant and reliable. Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 589 (1993). The court "must determine whether the testimony has a reliable basis in the knowledge and experience of the [relevant] discipline." Kumho Tire Co. v. Carmichael, 526 U.S. 137, 149 (1999). This obligation extends not only to scientific testimony, but to all expert testimony requiring "technical" or "other specialized" knowledge. Id. at 141. The court has "broad latitude" in deciding how to measure reliability, as well as in making the ultimate reliability determination. Id. at 142. Where the admissibility of testimony is based on specialized as distinguished from scientific knowledge, "Rule 702 generally is construed liberally." United States v. Hankey, 203 F.3d 1160, 1168 (9th Cir. 2000).

*Discussion*

With respect to whether Borden is qualified to testify as a human factors expert, the Court finds that he is qualified based on his knowledge, skill, experience, and training. See Fed. R. Evid. 702, Adv. Comm. Note (2000) ("[T]he text of Rule 702 expressly contemplates that an expert may be qualified on the basis of experience."); see also Caldwell v. City of S.F., 2021 U.S. Dist. LEXIS 72358, *10 (N.D. Cal. Apr. 13, 2021). In his report, Borden expressly states in his "Expert Analysis, Opinions, and Conclusions" section that "based on my background, training, education, and experience, these are my opinions thus far in this matter." As Defendants note, Borden has extensive training and experience as a law enforcement officer and course instructor on police performance, investigations, decision making, and action-reaction timing. Borden also is educated and experienced in videography and forensic video review and analysis. He also

qualified and testified on human factors issues in multiple prior court cases.  Accordingly, the Court finds that Borden is qualified to testify in this case so long as he explains how his experiences led to the conclusions he reached, why those experiences are a sufficient basis for his opinions, and how those experiences are reliably applied to the facts.  See Fed. R. Evid. 702, Adv. Comm. Note (2000) ("If the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts.").

The Court further finds that Borden's testimony is both relevant and reliable.  Borden's testimony concerns the standards and reaction times for police officers in high-risk situations and related issues of officer perception, communications, tactics, decision-making, and forensic video analysis.  This testimony directly relates to the subject encounter and claims at issue between Wallace and Defendants, and will "help the trier of fact to understand the evidence or to determine a fact in issue."  United States v. Diaz, 876 F.3d 1194, 1196 (9th Cir. 2017).  "An opinion is not objectionable just because it embraces an ultimate issue."  Id.  Furthermore, under the liberal standard of Rule 702, Borden sufficiently explains in the General Methodology section of his report the methodology he used to reach his conclusions.  Hankey, 203 F.3d at 1168.  Specifically, Borden describes in detail how he reviewed the case file, video evidence, officers' actions, nationally accepted police training and practices, and performance and movement dynamics.

That said, Borden may not explicitly opine whether he believes Defendants' use of force was reasonable.  Diaz, 876 F.3d at 1197 ("[A]n expert witness cannot give an opinion as to her legal conclusion, i.e., an opinion on an ultimate issue of law.").  Nor can he opine on what he believed Defendants actually "perceived" during the subject encounter, though he may testify regarding Defendants' overt actions and whether he believes they were made in a manner consistent with a response to Plaintiff's actions.  Furthermore, as Borden agreed, he may not testify regarding the topics covered by Fonzi because such testimony would be unfairly

cumulative.  Thus, Borden generally may not testify on police practices, policies, and procedures regarding detention, arrest, and use of force and related contemporary investigative and law enforcement practices, tactics, training, procedures, and policies, as they relate to the events at issue in this case.[3]

*Ruling*

Plaintiff's motion in limine is granted to the extent that Borden may not testify regarding whether Defendants' use of force was reasonable, what Defendants actually perceived, and the general topics of police practices, policies, and procedures that will be covered by Fonzi. Plaintiff's motion in limine is otherwise denied.

5.   Motion No. 5 – Exclude Evidence/Testimony Regarding the Unproduced Video Taken by Witness Andre Bouieadams

*Plaintiff's Argument*

Wallace argues that witness Andre Bouieadams lived in the apartment across the walkway from the apartment that was searched by the Defendants.  Mr. Bouieadams used his cell phone to video record the interactions he observed with Wallace and the Defendants.  In his deposition, Bouieadams stated that he provided the cell phone video to Wallace, but neither Wallace nor Bouieadams can locate the video.  Wallace's counsel hired BCT Consulting to inspect the cellphone, but no video was found.  Nevertheless, because the entire incident between Wallace and the Defendants was recorded by several police bodycams, the video taken by Bouieadams is irrelevant.  At his deposition, when Bouieadams was shown the bodycam video from Feller's bodycam, Bouieadams testified that Feller's video did not depict anything different from what Bouieadams observed.  Mentioning Bouieadams's cellphone video would be confusing and unduly prejudicial as Defense counsel would merely spend trial time speculating about what the video shows even though no counsel in this case has seen the video.

---

[3] Defendants indicate that there may be some minimal overlap between Borden and Fonzi's testimony.  As indicated above, Defendants shall endeavor to have all police practices topics addressed through Fonzi.  Nevertheless, the Court recognizes that some minimal overlap may be necessary for Borden to express his opinions.  Therefore, the Court will permit only necessary and minimal police practices testimony from Borden that is necessary to understand Borden's "human factors" testimony.

*Defendants' Opposition*

Defendants agree that testimony about the contents of the video should be excluded because of the danger of unfair prejudice from the unknown contents of the video.  However, the video itself and the fact that it was provided to Wallace but never produced to Defendants is relevant.  Defendants cannot determine whether the cellphone video depicts anything different from the bodycams.  Because one bodycam video shows Bouieadams recording the incident from his doorway, it is likely the cellphone video depicts the incident from a different angle from the bodycams.

During discovery, Wallace was ordered to produce the cellphone video, but he never did.  Defendants argue that Wallace is guilty of spoliation regarding the cellphone video and that an adverse inference instruction is appropriate.  The inference instruction is based on the fact that Wallace had possession of the video, but because he did not preserve it, it is fair to assume that he was threatened by its contents.  Defendants request the instruction of CACI No. 204:  "You may consider whether one party intentionally concealed or destroyed evidence.  If you decide that a party did so, you may decide that the evidence would have been unfavorable to that party."

*Legal Standard*

Courts have the inherent authority to impose sanctions against a party for the destruction or spoliation of relevant evidence.  Leon v. IDX Systems Corp., 464 F.3d 951, 958 (9th Cir. 2006); Medical Lab. Mgmt. Consultants v. ABC, 306 F.3d 806, 824 (9th Cir. 2002); Glover v. BIC Corp., 6 F.3d 1318, 1329 (9th Cir. 1993).  A party engages in spoliation of evidence "as a matter of law only if [the party] had 'some notice that the documents were potentially relevant' to the litigation before [the evidence was] destroyed."  United States v. Kitsap Physicians Serv., 314 F.3d 995, 1001 (9th Cir. 2002).  "A party does not engage in spoliation when, without notice of the evidence's potential relevance, it destroys the evidence according to its policy or in the normal course of business."  United States v. $ 40,955.00, 554 F.3d 752, 758 (9th Cir. 2009).  The sanctions imposed for spoliation should be based upon, and take into account, the specific or unique facts of the particular case.  See Unigard Sec. Ins. Co. v. Lakewood Engineering & Mfg. Corp., 982 F.2d 363, 369 (9th Cir. 1992) (citing with approval Welsh v. United States, 844 F.2d

13

1239, 1246-47 (6th Cir. 1988)).  Sanctions for spoliation should not be imposed if the spoliated evidence does not have sufficient relevance.  See Ryan v. Editions Ltd. West, 786 F.3d 754, 766 (9th Cir. 2015); Akiona v. United States, 938 F.2d 158, 161 (9th Cir. 1991).  Further the absence of prejudice to the complaining party is a sufficient basis to deny sanctions for spoliation.  Ryan, 786 F.3d at 766.  The availability of other sources or types of evidence, in addition to the despoiled evidence, may be considered by a court in determining if a sanction is warranted.  See Medical Lab., 306 F.3d at 824-25.

*Discussion*

Given the arguments before the Court, the parties are in agreement that no evidence or testimony regarding the *contents* of Bouieadams's cellphone video should be admitted.  The issues are whether testimony about the *existence* of the cellphone video should be admitted and whether a permissive adverse inference instruction should be given.

Defendants have presented no evidence that Wallace destroyed Bouieadams's cellphone video intentionally or otherwise.  The only evidence before the Court is that Bouieadams sent the cellphone video to Wallace, but neither Wallace nor a third party consulting firm was able to find the video on his phone.  There is no evidence regarding when or how many times Wallace saw the video, when the last time Wallace saw the video, any steps that Wallace may have taken to preserve the video, or testimony about any actions Wallace took to delete the video.  There is simply an indication that Wallace can no longer find the video on his phone.  Further, Bouieadams testified that Feller's bodycam video contained nothing different from what he saw.  This suggests that Bouieadams's video is materially similar to Feller's bodycam video.  Finally, and relatedly, Defendants apparently have several bodycam videos that depict the incident, including Feller's bodycam video.  In the absence of a sufficient indication that Wallace actually deleted or destroyed the video, and given Defendants' possession of Feller's bodycam video and Bouieadams's testimony, the Court cannot find sufficient harm or conduct by Wallace that would justify any sanction for spoliation.  See Medical Lab., 306 F.3d at 824-25.

Accordingly, mentioning Bouieadams's cellphone video would only have relevance for purposes of a permissive spoliation instruction.  Because the Court finds that no spoliation

sanction is warranted, the existence of Bouieadams's cellphone video has no relevance to this case.  Moreover, to the extent that there is relevance to the existence of the cellphone video, under Rule of Evidence 403 the danger of confusion substantially outweighs any relevance.

*Ruling*

This motion in limine is granted, and no spoliation sanctions will be issued.

## II.   **DEFENDANTS' MOTIONS IN LIMINE**

### 1.   Motion No. 1 – Exclude Reference to Any Other Prior or Subsequent Incidents or Internal Affairs Investigations Involving Officers in This Case

*Parties' Positions*

Defendants move to exclude all references to or evidence of prior or subsequent incidents or Fresno Police Department Internal Affairs  investigations involving Martinez, Loza, or Feller. In particular, Defendants identify the Internal Affairs investigation associated with *Perez v. City of Fresno, et. al.*, 1:18-cv-0127 AWI EPG.  Defendants argue that these incidents, investigations, and reports are irrelevant, confusing, and unduly prejudicial.

Wallace has filed a notice of non-opposition.

*Discussion*

Given the express non-opposition, the Court detects no reason why Defendants' first motion in limine should not be granted.

*Ruling*

In light of Wallace's non-opposition, this motion in limine is granted.

### 2.   Motion No. 2 – Exclude Evidence and Argument Relating to Wallace's Nose Being Broken or Fractured

*Defendants' Arguments*

Defendants argue that all evidence, testimony, and references concerning Plaintiff's nose being broken or fractured on the night of the subject incident should be excluded.  According to Defendants, no medical record indicates that Plaintiff's nose was broken or fractured; therefore,

any allegation that it was is false and irrelevant under Rule 402.  Furthermore, Defendants assert that allowing such unsubstantiated evidence of plaintiff's nose being broken or fractured would be unduly prejudicial, confuse the issues, and mislead the jury under Rule 403.

> *Plaintiff's Arguments*

Wallace argues that because this case involves allegations of excessive force inflicted on Wallace by Defendants, evidence of his nose being broken or fractured is relevant to the extent of the injuries Wallace sustained.  According to Wallace, he was informed, and his emergency physician and medical records confirm, that he had a nasal bone fracture.  Therefore, Wallace contends that evidence of his nose being broken or fractured is admissible.

> *Discussion*

There is no dispute that Wallace was struck in the face on the night of the subject incident. Therefore, the effects of any strikes on Wallace and Wallace's face and nose are directly relevant to Wallace's claims of excessive force and damages.  However, untrue allegations regarding Wallace's nose would be irrelevant and, therefore, inadmissible.

Upon review of the medical records and testimony of Dr. Kukurza, the Court agrees with Defendants that the allegation that Wallace's nose was actually broken or fractured is unsubstantiated.  While Dr. Kukurza initially diagnosed Wallace as having a "[c]losed fracture of nasal bone" on January 23, 2019, see Doc. No. 112-1 at 4, Dr. Kukurza later updated his diagnosis on January 25, 2019 to indicate that "[t]here is no evidence of displaced nasal bone fracture."  See Doc. No. 102 at 11.  Dr. Kukurza acknowledged in his deposition that his initial diagnosis was based on his review of an x-ray and that Wallace "*might* have a nasal bone fracture."  See Doc. No. 112-1 at 10 (emphasis added).  He also testified that his initial diagnosis had not been corroborated by a radiologist—i.e., a medical practitioner or physician with specialized training in interpreting x-rays—and that his diagnosis "could be amended or updated if it was, you know, felt prudent later" or "based upon the findings of the radiologist."  See id. at 11.  Thus, Dr. Kukurza's

subsequent diagnosis on January 25, 2019 indicates that his initial diagnosis needed to be amended or updated.  In other words, the medical records and testimony of Dr. Kukurza do not conclusively verify that Wallace suffered a broken or fractured nose.  Therefore, based on the medical evidence submitted, stating that Wallace's nose was in fact fractured/broken would be untrue and unduly prejudicial to Defendants.

Nevertheless, the evidence indicates that Wallace was struck in the face resulting in some form of pain and suffering to his nose.  Therefore, Wallace may testify that he felt pain in his nose, describe the degree of pain he felt, explain any beliefs he may have had that his nose *felt* broken or fractured, or express any fears that he may have had that his nose was broken.  Such evidence is relevant to Wallace's claims and is probative of the amount of force used and damages.  Such evidence is not excludable under Rule of Evidence 403.

*Ruling*

Defendants' motion in limine is denied to the extent that Plaintiff may testify that he felt pain in his nose, describe the degree of pain he felt, explain any belief that his nose *felt* broken or fractured, or explain any fears that he may have had that his nose was broken.  Defendants' motion in limine is otherwise granted and Wallace may not testify that his nose was in fact broken or fractured on the night of the incident.

3.   Motion No. 3 – Exclude Undisclosed or Unproduced Witnesses & Evidence

*Defendants' Argument*

Defendants argue that the Court should exclude all undisclosed or unproduced Plaintiff's witnesses and any unproduced evidence pursuant to Rule of Civil Procedure 37.  Permitting undisclosed and unproduced witnesses to testify or admitting undisclosed evidence would constitute an unfair surprise to Defendants.  In particular, Defendants argue that Plaintiffs identified 18 witnesses on the pre-trial conference statement who were present during the incident. Five of those witnesses (Carl Peters, Brandon Young, Qyonna Sachay Perry, Karess Sainz, and

Rodnae Webb) were not included in either the initial or supplemental Rule 26(a)(1) disclosures. Also, despite Defendants' efforts to produce witnesses who were present during the incident, Plaintiff's counsel failed to produce any of the percipient witnesses for deposition.  Therefore, exclusion of Wallace's witnesses who were either undisclosed and/or unproduced for deposition is appropriate.

Defendants also argue that exclusion of Bouieadams's cellphone video is appropriate because, despite an order for Wallace to produce the video, it was never produced.

*Plaintiff's Opposition*

Wallace states that he is unaware of defense counsel's "efforts" to depose the so-called "Plaintiff's witnesses."  Plaintiff's counsel does not represent anyone except for Wallace. Plaintiff's counsel asserts that he was never asked to produce any witnesses for deposition, save for Wallace.  Defendants did not ask to depose Wallace's grandmother until the pre-trial conference.  Despite being less than two months from trial and well beyond the close of discovery, Plaintiff's counsel produced the grandmother and her deposition was taken on July 14, 2022. Plaintiff's counsel states that they have no intention to call any witness at trial who has not been previously deposed.

With respect to the cellphone video, despite diligent searches, the cellphone video was unable to be discovered.

*Legal Standard*

"If a party fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1); <u>Merchant v. Corizon Health, Inc.</u>, 993 F.3d 733, 739 (9th Cir. 2021).  This aspect of Rule 37(c) is "automatic" in that a district court may properly impose an exclusion sanction where a noncompliant party has failed to show that the discovery violation was either substantially justified or harmless. <u>Merchant</u>, 993 F.3d at 739.  "[T]he burden is on the party facing the sanction to demonstrate that the failure to comply with Rule 26(a) is substantially justified or harmless."  <u>Torres v. City of L.A.</u>, 548 F.3d 1197, 1213 (9th Cir. 2008).

1      *Discussion*

2          Defendants have identified five witnesses who allegedly were not timely disclosed through

3   either Wallace's initial Rule 26(a)(1) disclosures or his supplemental Rule 26 disclosures.

4   Wallace does not specifically address these five witnesses, does not contend that these witnesses

5   were timely disclosed, and does not explain why any untimely disclosure was either substantially

6   justified or harmless to Defendants.  Under these circumstances, the Court accepts that the

7   witnesses were untimely disclosed and that the automatic exclusionary remedy of Rule 37 applies.

8   See Fed. R. Civ. P. 37(c)(1); Merchant, 993 F.3d at 739.  Therefore, witnesses Carl Peters,

9   Brandon Young, Qyonna Sachay Perry, Karess Sainz, and Rodnae Webb will be excluded from

10  providing any testimony at trial.  See id.

11         With respect to the 13 additional percipient witnesses who were disclosed by Wallace,

12  Wallace states that he does not intend to call any witness who had not been previously deposed.

13  Based on that representation, there is no danger that a witness who has not been deposed will be

14  called to testify.  If a witness was properly deposed, then Defendants will have attended the

15  deposition and asked any questions that they deemed proper.  Therefore, the Court will not

16  exclude the remaining 13 percipient witnesses from testifying at this time.  If any disclosed yet

17  "undeposed" witness is called by Wallace, then Defendants may object at trial.  To the extent that

18  Defendants believe that Rules 26(a) or (e) have been violated, then they may seek exclusion under

19  Rule 37(c)(1) at that time.[4]  The Court will then address the propriety of permitting a disclosed but

20  undeposed witness.

21         With respect to the cellphone video, that video was taken by Bouieadams.  Pursuant to the

22  Court's ruling with respect to Plaintiff's fifth motion in limine, neither the contents nor the

23  existence of that cellphone video will be revealed or disclosed to the jury.

24         To the extent that Defendants seek a blanket exclusion of all undisclosed evidence or

25  witnesses, the Court will not grant such a request.  Under Rule 37(c)(1), exclusion is the general

26  rule unless the party facing exclusion can show substantial justification or harmlessness.  See Fed.

27

28  _____
[4] The Court notes that Rule 37(c)(1)'s express language does not address exclusion based on issues surrounding a deposition or efforts to obtain a deposition.

R. Civ. P. 37(c)(1); <u>Merchant</u>, 993 F.3d at 739; <u>Torres</u>, 548 F.3d at 1213.  Issuing a blanket exclusion would be contrary to Rule 37(c)(1) in that it would erase the ability of a party to show either substantial justification or harmlessness with respect to a specific witness or piece of evidence.  Therefore, the Court will issue no blanket exclusions.  If a party believes that improper or untimely disclosure has occurred, then that party may make a Rule 37(c)(1) objection.  The proponent of the evidence will then be expected to demonstrate either proper and timely disclosure or substantial justification or harmlessness for an untimely disclosure.

*Ruling*

This motion in limine is granted in that, pursuant to Rule 37(c)(1), witnesses Carl Peters, Brandon Young, Qyonna Sachay Perry, Karess Sainz, and Rodnae Webb will be excluded from providing any testimony at trial.  This motion in limine is otherwise denied without prejudice, as discussed above.

4.      Motion No. 4 – Exclude All Evidence and Argument Regarding Ferguson, George Floyd, Black Lives Matter, or Other Unrelated National Cases or Social Movements

*Parties' Positions*

Defendants argue that references to, evidence of, reports about, or arguments about/based on Ferguson, Missouri, George Floyd, Black Lives Matter, or other unrelated cases and/or social movements should be excluded as irrelevant, unfairly prejudicial, and inadmissible hearsay.

Wallace has filed a notice of non-opposition.

*Discussion*

Given the express non-opposition, the Court detects no reason why Defendants' fourth motion in limine should not be granted.

*Ruling*

In light of Wallace's non-opposition, this motion in limine is granted.

5.      Motion No. 5 – Exclude "Golden Rule" and "Reptile Theory" Arguments

*Parties' Positions*

Defendants argue that all "golden rule" and "reptile theory" arguments should be

precluded.  The "golden rule" arguments asks jurors to put themselves in the plaintiff's shoes to do

unto other what they would have done unto them.  The "reptile theory" argument is a variation of

the "golden rule" argument that seeks a verdict based on the jury's protection of the community

and sense of survival and protection.

Wallace has filed a notice of non-opposition.

*Discussion*

Given the express non-opposition, the Court detects no reason why Defendants' fifth

motion in limine should not be granted.

*Ruling*

In light of Wallace's non-opposition, this motion in limine is granted.


6.      Motion No. 6 – Bifurcate the Trial

*Parties' Positions*

Defendants move to bifurcate the trial into two phases:  (1) liability and punitive damages

predicate; and (2) damages and punitive damages calculation.

Wallace has filed a notice of non-opposition.

*Discussion*

In the Court's Pre-Trial Order, the Court ordered that this case would be bifurcated in the

manner urged by Defendants.  The Pre-Trial Order stated that this case would be conducted in two

phases:  (1) liability and punitive liability; and (2) damages and punitive damages.  See Doc. No.

91 at 30:22-24.  Given that the Pre-Trial Order has already determined that this case will be

bifurcated as requested in this motion in limine, the motion is redundant.  The Court will not grant

a redundant motion.

*Ruling*

Because the Court has already determined and ordered that this case will be bifurcated into

two phases ((1) liability and punitive liability, and (2) damages and punitive damages),

Defendants' sixth motion in limine is denied as redundant.

7.   Motion No. 7 – Exclude References to the Fresno Police Department's Internal Investigation of Incident in Question, Including the Report, Findings, and Recommendation That Resulted

*Parties' Positions*

Defendants argue that evidence of and references to the Fresno Police Department's internal investigation into the incident in question should be excluded.  The investigation and resulting reports, findings, and recommendations are irrelevant to any issue to be decided by the jury, are unfairly prejudicial and misleading, and are inadmissible as subsequent remedial measures under Federal Rule of Evidence 407 and *Maddox v. City of L.A.*, 792 F.2d 1408, 1417 (9th Cir. 1986).

Wallace has filed a notice of non-opposition.

*Discussion*

Given the express non-opposition, the Court detects no reason why Defendants' seventh motion in limine should not be granted.

*Ruling*

In light of Wallace's non-opposition, this motion in limine is granted.

8.   Motion No. 8 – Exclude Any References to or Documents Regarding Martinez's Amateur Boxing Career

*Defendants' Arguments*

Defendants argue that any reference or documents regarding Defendant Martinez's boxing background should be excluded because they are irrelevant to the issue of whether his conduct during his interaction with Wallace was objectively reasonable. Additionally, Defendants assert that introduction of such evidence would be unfairly prejudicial to them under Rule 403 in that the jury might view Martinez as prone to violence simply because of his boxing experiences. Furthermore, Defendants argue that such evidence constitutes improper character evidence under Rule 404 to which no exception applies. Specifically, Defendants contend that any intent, plan, or motive that Martinez may have had stemming from his boxer experiences is wholly irrelevant to Wallace's constitutional claims, which are adjudicated based on an objective rather than a

subjective standard.  Finally, Defendants argue that any website posting or newspaper article referencing Martinez's boxing career is hearsay to which no hearsay exception applies.

*Plaintiff's Arguments*

Wallace argues that evidence regarding Martinez's boxing career is relevant to the nature and degree of physical contact involved and the risk of harm and actual harm suffered by Plaintiff. Martinez is an experienced and former state champion boxer with approximately 150 to 200 sparring matches since 2012.  Therefore, Wallace contends that punches thrown by him are more dangerous and forceful than punches thrown from someone with no fighting experience. Additionally, Wallace opines that Martinez's size, fitness level, and fighting experiences are relevant to decide the level of force used, the objective reasonableness of any claimed fear for his own safety, and whether that force was reasonable under the totality of the circumstances.

*Discussion*

The Court finds that Martinez's boxing background has limited relevance to the issues in this case.  While his past accomplishments and experiences as a boxer highlight his athleticism and ability to throw forceful punches, the Court is not persuaded that this evidence is sufficiently probative of whether his use of force in this case was excessive.  To gauge the amount of force used by Martinez, the jury can see for themselves the video recordings of the punches and can hear testimony from Martinez and Wallace, as well as view Wallace's resulting medical records.  This evidence more accurately demonstrates the amount of force Martinez used during his encounter with Wallace.

Furthermore, to the extent there is any probative value in the evidence of Martinez's boxing background, it is outweighed by the danger of unfair prejudice.  The circumstances in which boxers throw punches while sparring are vastly different than the circumstances of the subject encounter between Wallace and Martinez.  Landing violent punches on the opponent is the primary purpose and means of gauging success in boxing, while this is not so in police encounters

with civilians during an arrest.  Therefore, there is a risk the jury would improperly impute that

violence to the dissimilar circumstances of this case.  Moreover, to the extent Wallace seeks to

admit evidence of Martinez's boxing background to prove his intent, plan, or motive, it was

Wallace's burden to show that Martinez's past acts as a boxer were performed in a context similar

to the circumstances in this case and that reflect his intent.  See United States v. Charley, 1 F.4th

637, 647 (9th Cir. 2021) (noting similarity requirement under Rule 404(b)(2)); United States v.

Ayers, 924 F.2d 1468, 1473 (9th Cir. 1991) (expressly recognizing that other acts must be similar

in order to prove intent).  Wallace has not satisfied this burden.

*Ruling*

Defendants' motion in limine is granted.

9.      Motion No. 9 – Exclude All Evidence and Argument Relating to Allegations of
        Racial Animus or Bias By Defendants Toward Wallace

*Parties' Positions*

Defendants argues that any evidence or arguments regarding racial animus by any

Defendants, but particularly Martinez should be excluded as improper character evidence,

irrelevant, and unfairly prejudicial.

Wallace has filed a notice of non-opposition.

*Discussion*

Given the express non-opposition, the Court detects no reason why Defendants' ninth

motion in limine should not be granted.

*Ruling*

In light of Wallace's non-opposition, this motion in limine is granted.

10.     Motion No. 10 – Exclude All Opinions By Wallace's Expert Scott Defoe That
        Were Nullified By the Court's Summary Judgment Order

*Parties' Positions*

Defendants argue that the Court issued an order on summary judgment that dismissed all

claims against Officer Michael Aguilar, all *Monell* claims against the City, any excessive force

claim based on Martinez initially grabbing ahold of Wallace, any excessive force claim based on

Feller initially grabbing ahold of Wallace 's shoulder and failing to intervene in Martinez's

standing punches, any excessive force claim against Loza for failing to intervene, and all state law

liability through Cal. Gov. Code § 815.2 against the City for the actions of Aguilar, for Martinez

grabbing ahold of Wallace's arm, and Feller grabbing ahold of Wallace's shoulder.  Because these

issues have been resolved, Defoe should be precluded from offering opinions on them.

Wallace has filed a notice of non-opposition.

*Discussion*

Given the express non-opposition, the Court detects no reason why Defendants' tenth

motion in limine should not be granted.

*Ruling*

In light of Wallace's non-opposition, this motion in limine is granted.


**ORDER**

Accordingly, IT IS HEREBY ORDERED that:

1.    Plaintiff's first motion in limine is RESERVED regarding the potential admissibility of

Plaintiff's alleged gang affiliation with respect to the issue of damages; and

2.    Plaintiff's remaining motions in limine (Doc. Nos. 96, 97, 98, 99, and 100) are GRANTED

IN PART and DENIED IN PART as set forth above.

3.    Defendants' motions in limine (Doc. Nos. 95, 102, 103, 104, 105, 106, 107, 108, 109, 110,

and 111) are GRANTED IN PART and DENIED IN PART as set forth above.


IT IS SO ORDERED.

Dated:   July 21, 2022      _____

SENIOR  DISTRICT  JUDGE